IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

FLOWBEE INTERNATIONAL, INC.  §
and FLOWBEE HAIRCUTTER       §
LIMITED PARTNERSHIP,         §
                             §
    Plaintiffs,               §        Civil Action No. C-09-199
                             §
v.                           §
                             §
GOOGLE, INC.,                §
                             §
    Defendant.               §

## PLAINTIFFS' INITIAL BRIEF OF LAW

Plaintiffs **FLOWBEE INTERNATIONAL, INC. and FLOWBEE HAIRCUTTER LIMITED PARTNERSHIP,** files this, their Initial Brief of Law.

### I.

### FACTUAL SUMMARY

"Flowbee" is a coined, trademarked name owned by Plaintiffs that refers to a particular patented vacuum haircutting system. While the Flowbee haircutting system has competitors, the competitors are not called Flowbee, nor is Flowbee a generic term. Plaintiffs have expended substantial sums of money promoting the Flowbee product through advertising and infomercials.

Google operates an Internet search engine. When a web user enters a search term into Google's search engine, he or she will receive a list of hyperlinks to web pages that Google identifies as relevant to that search. These are known as "organic search results." Google generates revenue by displaying advertising—which it refers to as "sponsored links"—above and/or beside these

organic search results. Google offers advertisers the ability to select certain "keywords" that will trigger a "sponsored link" to the advertisers' chosen website. Among the types of keywords that Google allows advertisers to purchase to trigger "sponsored links" are the trademarks of third parties, including Flowbee. In other words, Google is selling the use of Flowbee's trademark to competitors without authorization.

Furthermore, Google owns and administers an "AdSense" program, which is an ad serving application that allows website owners to enroll, and, for a fee, avail themselves of various keyword triggers. On information and belief, Google has sold the trademarked name "Flowbee" to a competitor or competitors as a keyword trigger through Google's AdSense program. Thus, when the potential Flowbee customer clicks upon the term "Flowbee," they are directed to competitors of Flowbee.

Google has profited by selling the "Flowbee" trademark to third parties in its "Sponsored Links" program and its "AdSense" program. Flowbee has never authorized Google to sell the Flowbee trademark for use by its competitors. Google has profited from the unauthorized use of the Flowbee trademark, and Flowbee has suffered harm by virtue of this trademark infringement and diversion of customers.

Flowbee has brought suit against Google under the following Federal causes of action:

    a.    Federal trademark infringement under the Lanham Act [15 U.S.C. §1114(1), 1125(a)];

b. Contributory trademark infringement under the Lanham Act [15 U.S.C. §1114(a), 1125(a)];

c. Vicarious trademark infringement under the Lanham Act [15 U.S.C. § 1114(a), 1125(a)];

d. False representation under the Lanham Act [15 U.S.C. § 1125(a)]; and

e. Trademark dilution under the Lanham Act [15 U.S.C. § 1125(c)].

Flowbee has brought suit against Google under the following Texas causes of action:

a. Trademark infringement under the Texas Trademark Act [TEX. BUS. & COMM. CODE § 16.29];

b. Trademark dilution under the Texas Trademark Act [TEX. BUS. & COMM. CODE § 16.29];

c. Unfair competition [*Taylor Publishing Co. v. Jostens*, 216 F.3d 465 (5th Cir. 2000)];

d. Misappropriation [*United States Sporting v. Johnny Stewart*, 865 S.W.2d 214 (Tex. App.—Waco 1993, writ denied)]; and

e. Money had and received [*W.R. Edwards v. Mid-Continent*, 252 S.W.3d 833 (Tex. App.—Dallas 2008, rev. denied)].

## II.

### GOOGLE'S USE OF TRADEMARKED TERMS IN ITS SEARCH ENGINE ALGORITHM CONSTITUTES "USE IN COMMERCE" UNDER THE FEDERAL LANHAM ACT

The Lanham Act requires a plaintiff to establish that its trademark has been used "in commerce." 15 U.S.C. § 1114(1)(a) (liability for anyone who "shall ... use in commerce" another's mark); § 1114(1)(b) (liability for use of another's mark in "advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services"); § 1125(a)(1) (liability for anyone who "uses in commerce" another's mark); §

3

1125(c) (allowing an injunction against anyone who "commences use of a mark or trade name in commerce").

The federal circuit courts of appeal that have considered this issue have determined that the use of a trademarked term in a search algorithm constitutes "use in commerce" under the Lanham Act. Additionally the United States District Court for the Northern District of Texas has determined that Google's use of a trademarked term in a search algorithm constitutes "use in commerce" under the Lanham Act.

### **The Second Circuit**

The Court of Appeals for the Second Circuit addressed this issue very recently in the case of *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123 (2nd Cir. 2009), in which Rescuecom sued Google alleging that Google's practice of allowing advertisers to buy trademarked keywords constitutes trademark infringement and violates the Lanham Act:

> What Rescuecom alleges is that by the manner of Google's display of sponsored links of competing brands in response to a search for Rescuecom's brand name (which fails adequately to identify the sponsored link as an advertisement, rather than a relevant search result), Google creates a likelihood of consumer confusion as to trademarks. If the searcher sees a different brand name as the top entry in response to the search for "Rescuecom," the searcher is likely to believe mistakenly that the different name which appears is affiliated with the brand name sought in the search and will not suspect, because the fact is not adequately signaled by Google's presentation, that this is not the most relevant response to the search.

*Rescuecom*, at 131.

4

The Court of Appeals reversed the trial court's dismissal and held that Google's practice does indeed constitute a "use in commerce" under the Lanham act. *Rescuecom*, at 131.

### The Ninth Circuit

The Court of Appeals for the Ninth Circuit has likewise held that use of trademarks as keywords in a search engine constitutes actionable trademark infringement under the Lanham Act. In *Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004), Playboy Enterprises sued the defendant search engines for trademark infringement because they allowed advertisers to buy Playboy's trademarks as keyword terms that triggered banner advertisements when an end user conducted an internet search using one of the terms. The court denied the defendants' Motions for Summary Judgment stating, "[f]ederal jurisdiction over trademark cases rests on the Commerce Clause, sweeps as broadly as possible, and clearly encompasses the circumstances of this case." *Id*. at 1024 n.11.

### The Tenth Circuit

The Court of Appeals for the Tenth Circuit has also held that the use of trademarks as keywords in a search engine constitutes actionable trademark infringement under the Lanham Act. In *Australian Gold v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006), a manufacturer of suntan products sued unauthorized resellers of its products, alleging that they paid a search engine, Overture, to purchase the plaintiffs' trademarks as keywords to ensure that an end user searching for the trademarked terms would receive defendants' website as one of the top search

results. *Id.* at 1231-33. The Tenth Circuit implicitly held that this conduct constituted a "use in commerce." *Id. at* 1239. The Court squarely addressed the issue of whether this practice violates the Lanham Act:

> Defendants placed Plaintiffs' trademarks in the metatags Defendants' Web sites. Further, Defendants paid Overture.com to list Defendants in a preferred position whenever a computer user searched for Plaintiffs' trademarks. All of these actions were attempts to divert traffic to Defendants' Web sites. While viewing Defendants' Web sites, consumers had the opportunity to purchase Products, but also to purchase lotions from Plaintiffs' competitors. Moreover, Defendants continued to use the trademarks to divert internet traffic to their Web sites even when they were not selling Products. Thus, Defendants used the good-will associated with Plaintiffs' trademarks in such a way that consumers might be lured to the lotions from Plaintiffs' competitors. This is a violation of the Lanham Act.

*Id.* at 1239. *See also Brookfield Comms. v. W. Coast Entertainment Co.*, 174 F.3d 1036, 1064 (9th Cir. 1999) (use of trademarked terms in internet metatags is a use in commerce).

### **The Fifth Circuit**

American Airlines sued Google in the United States District Court for the Northern District of Texas similarly alleging that Google's use of and sale of American Airlines' trademark as a keyword constitutes trademark infringement and a "use in commerce" under the Lanham Act. *American Airlines v. Google*, Civil Action No. 4:07-CV-487-A (N.D. Texas, Fort Worth Division). Google filed a Motion to Dismiss, arguing, among other things, that "triggering an ad with a keyword is not 'trademark use'" and that Google's practice cannot violate the Lanham Act. The U.S. District Court overruled Google's Motion to Dismiss, implicitly determining that Google's practice constitutes a "use in commerce"

6

under the Lanham Act. Order, *American Airlines v. Google*, No. 4:07-CV-487-A (N.D. Tex. Oct. 24, 2007).

## Other Federal District Courts

A number of other Federal District Courts have held that the same or similar conduct by a search engine constitutes "use in commerce." *Google v. American Blind & Wallpaper,* 2007 WL 1159950, * 6 (N.D. Cal. 2007) ("[T]he sale of trademarked terms in the AdWords program is a use in commerce for the purposes of the Lanham Act."); *Boston Duck Tours v. Super Duck Tours*, 527 F. Supp.2d 205, 207 (D. Mass. 2007) ("Because sponsored linking necessarily entails the 'use' of the plaintiff's mark as part of a mechanism of advertising, it is 'use' for Lanham Act purposes."); *JG Wentworth v. Settlement Funding,* 2007 WL 30115 (E.D. Pa. 2007); *Edina Realty v. TheMLSOnline.com,* 2006 WL 737064 (D. Minn. 2006) ("Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce."); *Buying for the Home v. Humble* Abode, 459 F. Supp. 2d 310, 323 (D. N.J. 2006); *GEICO v. Google,* 330 F. Supp. 2d 700 (E.D. Va. 2004).

It should be noted that trademark law only requires a "use and commerce." Neither the Lanham Act nor the Fifth Circuit has established a separate requirement that the Defendant communicated the mark to the public as an indicator of the source or origin of goods or services. To the contrary, the Fifth Circuit has noted that Congress "broaden[ed] the protection afforded by" 15 U.S.C. § 1114 by "delet[ing] the previously existing requirement that the confusion or deception must relate to the 'source of origin of such goods or services.'" *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d

1004, 1009-10 (5th Cir. 1975). This is why courts within the Fifth Circuit and around the country have regularly found defendants liable not only for the use of a mark in visible advertising, but also in the hidden code of websites known as "metatags." *See, e.g., Pet Silk, Inc. v. Jackson*, 481 F. Supp. 2d 824, 826 (S.D. Tex. 2007); *Bayer Corp. v. Custom Sch. Frames, LLC*, 259 F. Supp. 2d 503, 509 (E.D. La. 2003). In these cases, the courts held that a use in commerce existed notwithstanding the consumers could not see the metadata. The relevant question is not whether the mark is visible, but whether the defendant's "use of the mark . . . creates a likelihood of confusion in the minds of potential consumers." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536-37 (5th Cir. 1998).

### III.

### GOOGLE'S USE OF TRADEMARK TERMS IN ITS SEARCH ENGINE ALGORITHIM HAS A HIGH LIKELIHOOD OF CAUSING CONFUSION

Courts have noted that empirical studies indicate that Internet users do not understand Google's "sponsored links" to be advertisements, instead of true search results. *See, e.g., Edina Realty, Inc. v. TheMLSOnline.Com*, 80 U.S.P.Q.2d 1039, 1044 (D. Minn. 2006) (citing "a study concluding that 62 percent of consumers do not understand the difference between sponsored links and natural search results"; referring to Fallows, D., *Search Engine Users: Internet searchers are confident, satisfied and trusting—but they are also unaware and naïve*, pp. ii, 17 (2005), at http://www.pewinternet.org/pdfs/PIP_Searchengine_users.pdf>).

8

Thus, in *Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1026-27 (9th Cir. 2004), the Ninth Circuit Court of Appeals noted that the Plaintiffs raised, at a minimum, a fact issue as to whether this practice causes a strong likelihood of confusion among consumers. The Tenth Circuit made a similar observation in *Australian Gold v. Hatfield*, 436 F.3d 1228, 1239-40 (10th Cir. 2006), noting that while the issue of actual confusion was hotly contested, there was ample evidence of confusion to warrant denying the Defendants' motion for judgment as a matter of law.

## IV.

## CAUSES OF ACTION

### Federal Causes of Action

Because Google's use of Flowbee's trademarked name in its search engine algorithm constitutes a "use and commerce" under federal law. Google's actions violate the Lanham Act, 15 U.S.C. §1114(1), § 1125(a), and 1125(c). These causes of action under the Lanham Act involve trademark infringement, contributory trademark infringement, vicarious trademark infringement, false representation, and trademark dilution. 15 U.S.C. § 1114(1), § 1125(a), and § 1125(c).

Contributory trademark liability is established when a defendant (1) intentionally induces, causes, or materially contributes to the infringing conduct of another *or* (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement. *Choice Hotels Int'l, Inc. v.*

9

*Westhill Hotels I Ltd.*, No. Civ. A. 3:95-CV-1470P, 1996 WL 706876, at *4 (N.D. Tex. Dec. 4, 1996).

A defendant "may be held vicariously liable for [trademark] infringing activity even if he is not the person actually carrying out the infringing activity if he has the right and ability to supervise the activity and also has a direct financial interest in it. *Choice Hotels, Int'l, Inc.*, 1996 WL 706875, at *3.

### Texas Causes of Action

The Texas Trademark Act, Texas Business & Commerce Code § 16.29 provides as follows:

> "A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services."

Thus, Texas law also prohibits trademark infringement and trademark dilution.

To establish an unfair competition claim under Texas law, the plaintiff must prove that a defendant committed an illegal act that interfered with the plaintiff's ability to conduct its business. *Settlement Capital Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 729, 734 (N.D. Tex. 2004). The illegal act may consist of a violation of criminal law or any independent tort. *See id.* In particular, the same conduct that Plaintiffs have alleged in support of their other claims may also support a claim for unfair competition as a matter of well-established Texas law. *See, e.g., DP Wagner Mfg., Inc. v. Pro Patch Sys., Inc.* 434 F. Supp. 2d 445, 462 (S.D. Tex. 2006) (false advertising under the Lanham Act); *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53

S.W.3d 799, 803 n.3 (Tex. App.—Austin, 2001, pet. denied) (federal trademark infringement); *Settlement Capital Corp.*, 319 F. Supp. 2d at 734 (tortious interference claim). *Taylor Publishing Co. v. Jostens*, 216 F.3d 465, 486 (5th Cir. 2000); *Keane v. Fox Television Stations*, 297 F. Supp. 2d 921, 938 (S.D. Tex. 2004); *Minka Lighting v. Craftmade Int'l*, 2002 WL 31495990, *2 (N.D. Tex. Nov. 4, 2002).

Under Texas law, "misappropriation" (which can be the independent tort underlying a claim for unfair competition) requires a plaintiff to show (1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff. *HB Turbo v. Turbonetics Eng. & Svcs.*, 2007 WL 1629949, *1 n.1 (Tex. App--Corpus Christi Aug. 23, 2007, rev. denied) (citing *United States Sporting Prods. v. Johnny Stewart Game Calls*, 865 S.W.2d 214, 218 (Tex. App.--Waco 1993, writ denied)). *See also Minka*, 2002 WL 31495990 at *3; *Aldridge v. The Gap*, 866 F. Supp. 312, 313 (N.D. Tex. 1994).

"Money had and received" " is an equitable cause of action in Texas also known as "assumpsit."  The elements are: (1) the defendant holds money; and (2) the money belongs to the plaintiff in equity and good conscience. *W.R. Edwards v. Mid-Continent Office Distrib.*, 252 S.W.3d 833, 837 (Tex. App.--Dallas 2008, rev. denied); *Doss v. Homecomings Fin. Network*, 210 S.W.3d 706, 710-11 (Tex. App.--Corpus Christi 2006, pet denied).

Respectfully submitted,

David T. Bright
Mikal C. Watts
Christopher V. Goodpastor
Watts Guerra Craft, L.L.P.
Tower II Building
555 North Carancahua, Suite 1400
Corpus Christi, Texas 78478-0801
(361) 887-0500 Telephone
(361) 887-0055 Telecopier

By: _____
David T. Bright
Attorney at Law
State Bar No. 02991490
Federal Bar No. 8628
Mikal C. Watts
Attorney at Law
State Bar No. 20981820
Federal Bar No. 12419
Christopher V. Goodpastor
State Bar No. 00791991
Federal Bar No. 18505

**ATTORNEYS FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I certify that on September 23, 2009, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic" filing to individuals who have consented in writing to accept this notice as service of this document by electronic means. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by hand delivery in open court on September 23, 2009.

Mr. Charles "Chip" L. Babcock
Jackson Walker, LLP
1401 McKinney, Suite 1900
Houston, Texas 77010

Mr. Carl C. Butzer
Jackson Walker, LLP
Bank of America Plaza
901 Main Street, Suite 6000
Dallas, Texas 75202

Margret M. Caruso
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

**DAVID T. BRIGHT**