# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FLOWBEE INTERNATIONAL, INC. <br> and FLOWBEE HAIRCUTTER <br> LIMITED PARTNERSHIP, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br><br>Civil Action No. C-09-199 |

## DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Defendant Google Inc. ("Google") hereby respectfully submits this Reply Memorandum of Law In Further Support Of Its Motion To Dismiss and in reply to the response brief ("Opp.") filed by Plaintiffs Flowbee International, Inc. ("Flowbee International") and Flowbee Haircutter Limited Partnership ("Flowbee L.P.") (collectively "Flowbee").

## INTRODUCTION

Flowbee previously litigated the issue of its competitor RoboCut, Inc. bidding on the keyword "flowbee" to trigger AdWords advertisements in the Northern District of California. It lost. Its current Complaint takes aim at the same issue, but with a different target in a different forum. This is not the proper forum, however, because as a condition of participating in Google's AdWords program, Flowbee agreed to litigate *all* claims against Google that relate to any Google advertising program exclusively in the courts of Santa Clara County in California. As such, this case must be dismissed under Rule 12(b)(3), or, in the alternative, transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Flowbee's opposition to Google's motion to dismiss is predicated on its implicit argument that the words of the parties' contractual forum selection clause are superfluous and lack meaning. Yet Flowbee identifies no precedent for an interpretation so contrary to fundamental principles of contract law. It instead relies on cases that construe forum selection clauses that are narrowly tied to the contracts that contain them. These cases do not justify the dramatic rewriting of the Parties' contract sought by Flowbee.

## ARGUMENT

**I.  THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES DISMISSAL OF FLOWBEE'S COMPLAINT**

Flowbee does not dispute that it agreed to the AdWords Contract, which requires it to litigate all claims arising from or relating to Google's advertising program exclusively in

California.  Nor does it dispute the validity, enforceability, or mandatory nature of the forum selection clause.  Recognizing its inability to resist enforcement of the clause on those grounds, Flowbee understandably devotes much of its brief to trying to find some other way to nullify the plain language of the Parties' agreement.  However, under well-accepted principles of contract law, governing precedent, and common sense, this Court should enforce the forum selection clause.

### A. The Forum Selection Clause Applies To The Claims At Issue Because They All Relate To Google's Advertising Programs.

By its plain language, the AdWords Contract's forum selection clause applies not only to claims relating to that contract, but also to "all claims . . . relating to . . . the Google programs," which are defined as the Google advertising programs.  [Declaration of Tracy Lee-Blumberg dated September 11, 2009 ("Lee-Blumberg Decl.") ¶ 9](), [Ex. A, ¶ 9]().  Because this clause explicitly encompasses matters beyond those "arising from or relating to the agreement," any test of the applicability of the forum selection clause that is tied to the contract containing it—such as whether the claims depend on the contractual relationship of the parties, whether resolution of the claims relates to interpretation of the parties, and whether the operative facts parallel a breach of contract claims—is inapplicable.  Thus, like Flowbee's mantra that the Complaint does not arise out of the contract, the authority that it cites on pages 7-9 of its Opposition is irrelevant.

The logical conclusion that "[t]he test of whether the action could be maintained independently of the contract is not helpful" when the clause "explicitly encompasses matters beyond the scope of the contract" was adopted by the court in *TransFirst Holdings, Inc. v. Phillips*, No. 3:06-CV-2303-P, 2007 WL 631276, at *13 (N.D. Tex. Mar. 1, 2007).  The forum selection clause in *TransFirst* covered "any dispute or claim relating to or arising out of Employee's employment relationship with Employer, this [Employment] Agreement or the

termination of Employee's employment . . . ." *Id*. The court found that, according to its plain language, the clause applied to any claim "relating to" the employment relationship—irrespective of whether it arose out of the contractual relationship or could have been "maintained without any reference to the [Employment Agreement]." *Id*.

Because the forum selection clause here, like in *TransFirst,* is not limited to claims arising out of, or relating to, the Parties' contract, the determination of whether the clause applies to Flowbee's claims cannot be based on tests relating to contractual relationships, implicit breach of contract claims, or questions of contract construction. Flowbee cites no cases to the contrary, and instead cites cases addressing restrictive forum selection clauses that relate specifically to claims arising under the contract or requiring interpretation of the terms of the contract.[1] These inapposite cases do not control here, where the forum selection clause plainly states that it applies not only to claims arising under the contract, but also to all claims relating to the Google advertising programs. Lee-Blumberg Decl. ¶ 9, Ex. A ¶ 9.

Flowbee's reliance on *In re Yahoo! Inc.*, 313 Fed. Appx. 722, 2009 WL 613174 at *1 (5th Cir. Mar. 11, 2009), is similarly misplaced. In *American Airlines, Inc. v. Yahoo!, Inc.*, the Northern District of Texas rejected the defendant's forum selection clause argument. No. 4:08-CV-626-A, 2009 WL 381995, at *1 (N.D. Tex. Jan. 16, 2009). But it did not do so based on the scope of the claims to which the clause applied, as Flowbee argues this Court should do. Instead, the *Yahoo!* court found that the clause was permissive, not mandatory, as to the forum because

---

[1] *E.g. Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 690 (8th Cir. 1997), *cert. denied*, 119 S. Ct. 629 (1997) (clause applies to claims arising "hereunder"); *Lambert v. Kysar*, 983 F.2d 1110, 1112 (1st Cir. 1993) (clause applies to claims to enforce the "terms and conditions"); *Manetti-Farrow v. Gucci America, Inc.*, 858 F.2d 509, 510 (9th Cir. 1988) (clause applies to claims "regarding interpretation or fulfillment" of the contract); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 193 (3d Cir. 1983) (clause applies to claims regarding the contract "conditions"); *Gullion v. JLG Serviceplus, Inc.*, No. H-06-1015, 2007 WL 294174, at *6 (S.D. Tex. 2007) (clause applies to claims commenced "hereunder").

the "clause makes no mention that American's claims must be brought exclusively in a forum of Yahoo's choosing, only that American itself will submit to a California (or other designated) court's jurisdiction." *Id.* This unremarkable distinction between consent to jurisdiction and mandatory forum selection is not at issue here, where Flowbee does not dispute the mandatory nature of the clause. *E.g. Argyll Equities LLC v. Paolino*, 211 Fed. Appx. 317, 318-19 (5th Cir. 2006) (distinguishing mandatory forum selection from consent to jurisdiction); *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504-06 (5th Cir. 2004) (same).

The *Yahoo!* decision is not controlling here. Not only does Flowbee (i) concede the decisive issue in the *Yahoo!* decision (the mandatory nature of the forum selection clause), but it also (ii) fails to identify any reasonable alternate construction of the contract language such that the resulting ambiguity should be construed against the drafter;[2] (iii) fails to acknowledge (much less challenge) the effectiveness of the AdWords Contract provision that the agreement is deemed to have been drafted equally by both sides; and (iv) fails to reconcile that the Yahoo! clause did not contain comparable language to the clause here, expressly encompassing all claims relating to advertising programs. 2009 WL 381995 at *1. Thus, the authority upon which Flowbee relies relates to factual situations that are quite different from this case.[3]

---

[2] Although the *Yahoo!* court held that Yahoo's interpretation that the clause was mandatory was unreasonable, it noted that even if it were reasonable, any ambiguity should be resolved against Yahoo!, the drafter. *Id.* Significantly, unlike the AdWords Contract, the Yahoo! agreement did not contain a clause stating that the contract was to be construed as though drafted by both parties. Caruso Decl. ¶ 3, Ex. A. Given these facts, the Fifth Circuit understandably held that the "high hurdle for obtaining the extraordinary writ of mandamus has not been cleared in this case" and did not disturb the district court's ruling. *In re Yahoo!*, 2009 WL 613174 at *1.

[3] The *Rosetta Stone* decision (*see* Opp. at 9-10) was apparently based on the understanding that forum selection clauses can only apply to claims relating to the contracts that contain them. Caruso Decl. ¶ 4, Ex. B at 25:24-28:1. Google respectfully notes that the *Rosetta Stone* court did not have before it the discussion of Texas law presented here, which confirms that application of a forum selection clause is not so restricted in this Circuit.

Defendant Google Inc.'s Reply Memorandum of Law
<u>In Further Support Of Its Motion To Dismiss</u> – Page 4

### B. Under All Applicable Rules Of Contract Interpretation, The Forum Selection Clause Of The AdWords Contract Applies To Flowbee's Complaint.

The scope of the AdWords Contract's forum selection clause, which is not restricted to claims arising from or relating to the contract, does not render it unenforceable. As with all other contractual provisions, courts "must enforce the unambiguous language in a contract as written." *Clardy Mfg. Co. v. Marine Midland Business Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996).

Flowbee contends that principles of contract interpretation compel this Court to take the extreme step of ignoring the plain language of the contract. Opp. at 10-11. To the contrary, black-letter principles of contract interpretation dictate that all provisions of a contract must have meaning and no language should be rendered superfluous. *E.g., Equal Employment Opportunity Comm'n v. R.J. Gallagher Co.*, 181 F.3d 645, 651 (5th Cir. 1999) ("[Courts] must interpret a contractual agreement so as to give effect to each and every provision of the contract."). This is because "[p]arties to a contract are presumed to intend that each provision has meaning, and a clause will not be struck unless an irreconcilable conflict exists." *Aerus LLC v. Pro Team, Inc.*, No. 304CV1985M, 2005 WL 1131093, at *1 (N.D. Tex. May 9, 2005) (applying forum selection clause). Flowbee fails to offer any reasonable alternate proposal for what the words "all claims . . . relating to . . . the Google Programs" mean if not their plain language. As such, its request that the language should be ignored must be rejected.

Flowbee's argument that the forum selection clause's specific language should be limited by other, more general terms (Opp. at 10-11) is also unfounded. The preamble's reference to the AdWords Contract "govern[ing]" a customer's "participation in Google's advertising program(s)" does not conflict with, or create an ambiguity concerning, the forum selection clause's application to "all claims . . . arising out of or relating to . . . the Google Programs," and cannot justify reading words out of the Parties' agreement. Lee-Blumberg Decl. ¶ 9, Ex. A.

Defendant Google Inc.'s Reply Memorandum of Law
In Further Support Of Its Motion To Dismiss – Page 5

Flowbee posits that reading the contract as a whole nullifies the meaning of the plain language of the forum selection clause.  This is contrary to the well-settled principle that "a special or more particular clause . . . must prevail over a general clause." *Western Oil Fields, Inc. v. Pennzoil United, Inc.*, 421 F.2d 387, 389 (5th Cir. 1970).  Flowbee's citations to contract treatises are inapplicable because they address only reading the contract as a whole, not how to interpret specific provisions that govern more general ones.

Moreover, the preamble's reference to the AdWords Contract "govern[ing]" a customer's "participation in Google's advertising program(s)" is entirely consistent with the AdWords Contract's identification of the terms that customers must agree to in exchange for the ability to participate in the AdWords program.  Tellingly, in addition to the forum selection clause, the Contract contains other requirements that are not limited merely to the operation of placing advertisements through the AdWords program.  For example, AdWords customers agree not to "use any automated means or form of scraping or data extraction to access, query or otherwise collect Google advertising related information from any Program website or property." [Lee-Blumberg Decl. ¶ 9,](#) [Ex. A ¶ 4](#).  In other words, whatever legal or technical ability Flowbee had to take those actions independent of Flowbee's "participation in Google's advertising program," upon agreeing to the AdWords Contract, it relinquished them.   Likewise, even though Flowbee could have otherwise attempted to pursue its claims related to Google's AdWords program in this forum, as a condition of participating in the AdWords program, it relinquished its right to do so.  Thus, the general language of the preamble does not conflict with the forum selection clause's specific inclusion of all claims arising from or relating to the Google Programs.

To demonstrate the unreasonableness of Flowbee's position, it is instructive to consider a breach of paragraph 4's "scraping" prohibition.  If the scope of the forum selection clause were

as restricted as Flowbee proposes, this contractual breach would not be covered by the forum selection clause because it would not arise out of or relate to "the 2007 terms and conditions regarding Plaintiffs' advertising account or Plaintiffs' *participation* in Google's advertising program." Opp. at 10-11. Although all claims, including tort claims, based on "scraping" would clearly relate to the AdWords Contract's prohibition and thus satisfy the plain language of the forum selection clause, under Flowbee's cramped interpretation of the words "participation in Google's advertising program," this contractual breach would not be covered because it did not have to do with Flowbee's AdWords account or its advertising. Flowbee's proposed construction is unreasonable because it would negate the plain language of the forum selection clause. *E.g., Canutillo Indep. School Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 99 F.3d 695, 706 (5th Cir. 1996) ("[A]n interpretation is unreasonable if it would strip a provision of meaning."). Accordingly, Flowbee's contract interpretation cannot form the basis for finding an ambiguity, and must be rejected.

The AdWords Contract also contains clear language stating that "the agreement must be construed as if both parties jointly wrote it." Lee-Blumberg Decl. ¶ 9, Ex. A, ¶ 9. Accordingly, the rule of construing ambiguities against the drafter does not apply. *See*, *e.g.*, *City of Woodinville v. Northshore United Church of Christ*, 166 Wash.2d 633, 646 (2009) (holding that the principle of construing ambiguities against the drafter did not apply where one party drafted the agreement but the agreement contained language stating that the agreement should be construed as jointly drafted); *Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, Nos. 08-CV-7069 and 08-CV-11107, 2009 WL 1154094 at *6 n.9 (S.D.N.Y. Mar. 19, 2009) (same).

## C. The Forum Selection Clause Applies To Conduct Before 2007.

The forum selection clause's coverage of *all claims* relating to Google's advertising programs encompasses conduct that occurred before February 2007. The entirety of the authority Flowbee cites against the plain meaning of the word "all" consists of three cases analyzing forum selection clauses that, unlike the clause here, were exclusively tied in scope to the agreements that contained them.[4] Opp. at 12-13. As such, conduct predating those agreements could not be "related to" them. Because the clauses only covered claims related to *the agreements*, they did not apply. Thus, the timing of those claims was only relevant to the extent it related to the substantive subject matter (i.e., the agreements) covered by those forum selection clauses.

In contrast to the cases Flowbee cites, the forum selection clause here is not limited to claims related to the AdWords Contract. For that reason, the forum selection clause is not inherently limited in time by the date of the AdWords Contract. The only temporal restriction inherent in the clause is the creation of Google's advertising programs, which indisputably existed at all times relevant to the allegations of wrongdoing.

Flowbee's argument as to the timing of its claims also fails because the AdWords Contract contains an integration clause by which it "supersedes and replaces any other

---

[4] *Guillion*, 2007 WL 294174 at *7 ("By its own terms, the Employment Agreement's forum selection clause applies only to '**action[s] commenced hereunder**,' and, as such, it was not intended to govern disputes commenced under earlier, separate agreements, such as the alleged partnership agreement that forms the basis of Plaintiff's complaint.") (emphasis added); *Armco, Inc. v. North Atl. Ins. Co.*, 68 F. Supp. 2d 330, 338-39 (S.D.N.Y. 1999) ("plaintiffs base their fraud claims on numerous pre-contract activities by defendants" and therefore they do not arise under a clause governing disputes that "**arise out of or in connection with**" the agreement) (emphasis added); *Anselmo v. Univision Station Group, Inc.*, No. 92Civ.1471, 1993 WL 17173 at **2-3 (S.D.N.Y. Jan. 15, 1993) ("[T]he forum selection clause by its terms applies only to litigation **relating to 'this Agreement,'** so it was not intended to govern disputes arising under the terms of earlier contracts or agreements . . . .") (emphasis added).

agreements, terms and conditions applicable to the subject matter hereof." Lee-Blumberg Decl., ¶ 9, Ex. A ¶ 9. Pursuant to such integration clauses, courts treat the terms of more recent contracts as controlling over terms of prior contracts on the same subject matter. For example, in *Aerus*, the Court deemed controlling the forum selection clause of the parties' 2003 agreement, which contained an integration clause—notwithstanding the conflicting forum selection terms of the parties' 2001 agreement, or the plaintiff's argument that some portion of its claims arose under the 2001 agreement. 2005 WL 1131093, at **3, 8-9. Here, as in *Aerus*, the terms of the forum selection clause of the 2006 AdWords Contract differ from those in previous versions of the contract. Also as in *Aerus*, the current contract contains an integration clause specifying that the 2006 AdWords Contract supersedes any prior versions of that contract. Enforcement of the unchallenged integration clause, therefore, requires that all claims filed during the operative life of the Contract that relate to the advertising programs be brought in California, regardless of the time period in which they allegedly arose.[5]

Flowbee's purported March 2004 letter to Google does not change the basic principles of contract law that require giving effect to the words "all claims" and the parties' integration clause.[6] Even if it could, however, that letter cannot justify not enforcing the forum selection clause. The complaints at issue in the letter—including RoboCut's use of the word "flowbee" as

---

[5] Finding otherwise would lead to absurd results. For example, parties with a lengthy contractual relationship who executed multiple contracts with different forum selection clauses over the years would be contractually bound to litigate claims spanning the relationship in multiple different courts, notwithstanding an integration clause requiring the most recent contractual terms to govern obligations addressed differently under earlier contracts.

[6] The letter, attached as Exhibit A to the Declaration of Rick Hunts dated October 1, 2009 ("Hunts Decl."), is undated and unusual. Its text expresses Flowbee's intent to "hold *Overture Services Inc.* legally accountable" for its complaints, and it contains only two references to Google, both of which appear larger and in different font from the rest of the letter. Hunts Decl., Ex. A (emphasis added). For purposes of this motion, Google treats the letter as if it was sent to Google in March of 2004.

Defendant Google Inc.'s Reply Memorandum of Law
In Further Support Of Its Motion To Dismiss – Page 9

a keyword trigger for advertising—were the subject of the case *Robocut, Inc. v. Flowbee International, Inc.*, Case No. C 04 0979 (N.D. Cal. 2004). There, the court denied Flowbee's motion for a preliminary injunction seeking to enjoin RoboCut's allegedly infringing use of the word Flowbee in connection with RoboCut's Internet advertising and promotion. [Declaration of Carl Butzer, dated September 13, 2009 ("Butzer Decl.), Ex. B](); [Caruso Decl. ¶ 5](), [Ex. C](). The court held that RoboCut's bids on the word "Flowbee" in connection with its AdWords advertising and other use of the word "Flowbee" constituted fair use, and the case was subsequently dismissed with prejudice upon stipulation of the parties. [Caruso Decl. ¶ 5,]() [Ex. C at pp. 3-4, 8-10;]() [*Id.* ¶ 6,]() [Ex. D.]() Because any complaints identified in that letter have been resolved, the letter cannot be a basis for not enforcing the forum selection clause.[7]

## II.   IF NOT DISMISSED, FLOWBEE'S ACTION SHOULD BE TRANSFERRED

Alternatively, the Court should transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). The forum selection clause should weigh heavily in favor of transfer, as it "represent[s] the parties' agreement as to the most proper forum, and should be a significant factor that figures centrally in the district court's calculus." *U.S. v. Ross Group Const. Corp.*, No. SA-07-CA-0341-XR, 2007 WL 3119691, at *4 (W.D. Tex. Oct. 23, 2007). As discussed, the forum selection clause is valid, applicable to all the claims of Flowbee's Complaint, and enforceable. Because "the presence of a valid and enforceable forum selection clause shifts the burden of persuasion to the nonmovant who is attempting to avoid enforcement," *Aerus*, 2005 WL 1131093 at *10 (internal citation omitted), and Flowbee has not met this burden, this action should be transferred. In addition, the public and private factors

---

[7] Tellingly, Flowbee has not subsequently sued RoboCut and has represented to this Court that it did not intend to add RoboCut as a party to this action. [Caruso Decl. ¶ 7, Ex. E at 33:7-34:22.]()

weigh in favor of transfer. Moreover, because these factors favor transfer, the Court should transfer this action even if the forum selection clause is found not to apply.

### A. The Private Interest Factors Favor Transfer.

As discussed in Google's Motion to Dismiss, the primary sources of proof are located in California. The accused advertising programs were created at Google's headquarters in Northern California, and they continue to be operated from Northern California. Information relating to the functionality of the advertising programs, as well as information relating to Flowbee's and third parties' accounts with the AdWords program, is located in Northern California. Declaration of Rose Hagan ("Hagan Decl.") dated October 6, 2009, ¶¶ 4-5. In contrast, Flowbee's assertion that information relating to its alleged loss of profits is located in Corpus Christi is unavailing. Flowbee's attorney admitted at the Initial Pretrial conference that Flowbee would need to hire a forensic expert to determine loss of profits as a result of third-party advertising. Caruso Decl. ¶ 7, Ex. E, at 33:7-34:22. Flowbee has not identified the location of that expert (which it is not currently required to under Rule 26), but even if the expert were based in Corpus Christi, it would not affect the 1404(a) calculation. *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009) ("the convenience of expert witnesses is generally entitled to little weight on a motion to transfer venue.").

Moreover, the majority of key witnesses are located in Northern California. Hagan Decl. ¶¶ 4-5; Google's Amended List of Persons with Relevant Knowledge. Google has identified ten of its employees as key witnesses, all of whom reside in Northern California, and the topics of their necessary testimony. Defendant Google Inc.'s Amended List of Persons with Relevant Knowledge. In addition, Google has identified two non-party witnesses with knowledge relating to Google's anticipated defenses, including claim preclusion, laches, acquiescence, and waiver.

*Id.* These two witnesses, counsel for the parties in the already-settled action relating to RoboCut's advertising, both have offices in California. *Id.* In contrast, Flowbee has identified five witnesses located in Corpus Christi—Rick Hunts, three employees, and one non-party. Hunts Decl. ¶ 5. Even the existence of Flowbee's non-party witness does not change the propriety of proceeding in California. Although the location of non-party witnesses is important, "the convenience of the party witnesses is still a part of the analysis," and where the majority of both party and non-party witnesses are located in California, that factor weighs in favor of transfer. *Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 739 (E.D. Tex. 2005). Therefore, this factor weighs in favor of transfer.

### B. The Public Interest Factors Weigh In Favor Of Transfer.

Trying the case in Northern California will not create meaningful administrative difficulties. The six month differential to trial that Flowbee relies upon is only an average. Opp. 16. The actual difference may be much less in a trademark matter like this one, as opposed to a complex patent trial, for example. In addition, Flowbee asserts that it has known about the issues underlying its Complaint since 2004. Opp. at 12. Yet Flowbee filed suit only in 2009, after the expiration of the statute of limitations. *See Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009) (recognizing four year statute of limitations in California for trademark claims); *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859-60 (N.D. Tex. 2009) (recognizing four year statute of limitations in Texas for trademark claims). Having waited this long, an additional six months to trial in the Northern District of California would not be unfairly prejudicial to Flowbee.

The parties' contract clearly states that "the agreement . . . [is] governed by California law." Lee-Blumberg Decl., ¶ 9, Ex. A ¶ 9. As such, that factor weighs heavily in favor of

transfer. *See*, *e.g.*, *Beltran v. Paramount Petroleum Corp.*, No. SA-07-CA-192-FB, 2007 WL 2726214, at *4 (W.D. Tex. Aug. 10, 2007) (transferring case governed by California law to the Central District of California). Because this action involves a California company and the alleged harm also occurred in California, California has a strong interest in trying the case. *See*, *e.g. Silverman v. Bookzone, Inc.*, No. 3:04-CV-1772, 2005 WL 1902786, at *6 (N.D. Tex. Aug. 9, 2005) (transferring case to Arizona where it involved a former Arizona company and a substantial part of the alleged acts and omissions occurred there).

Although litigating in the Northern District of California may not be preferable to Flowbee now, given its loss in that court on its preliminary injunction involving the same issue presented here, the venue is not inconvenient, given Flowbee's prior choice not to file a motion to transfer from there. As Flowbee acknowledged back in 2004, venue was proper in that action concerning Internet use of the word "flowbee" "because a substantial part of the unfair competition and trademark infringement complained of herein has occurred and is occurring [there]." Butzer Decl. Ex. B, Counterclaim ¶ 4. In addition, judicial economy would be served by having a Court already familiar with Flowbee's claims based on RoboCut's bidding on the keyword "flowbee." *See*, *e.g. Datatreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (transferring action to a court with knowledge of the issues of the case, particularly "in the complex and technical area of patent and trademark law").

Because of the significant weight of the forum selection clause, as well as the additional private and public interest factors, if this action is not dismissed under Rule 12(b)(3) or transferred under 28 U.S.C. § 1406(a), it should be transferred to the Northern District of California under § 1404(a).

## Conclusion

Because Flowbee entered a valid and binding contract with Google that contains a mandatory California forum selection clause, this action should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure. In the alternative, this Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404(a).

Respectfully Submitted,

GOOGLE INC.
By Counsel

s/ Margret M. Caruso
MARGRET M. CARUSO (*admitted pro hac vice*)
ATTORNEY-IN-CHARGE
California State Bar No. 243473
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5101
(650) 801-5100 – Fax
Email: margretcaruso@quinnemanuel.com

CHARLES L. "CHIP" BABCOCK
LEAD LOCAL COUNSEL
Texas State Bar No. 01479500
Federal Bar No. 10982
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010-4008
(713) 752-4210
(713) 308-4110 - Fax
Email: cbabcock@jw.com

CARL C. BUTZER
CO-LOCAL COUNSEL
Texas State Bar No. 03545900
Federal Bar No. 16376
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-5902
(214) 661-6609 - Fax
Email: cbutzer@jw.com

ATTORNEYS FOR DEFENDANT GOOGLE INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6th, 2009, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today, October 6th, 2009.

                                                s/ Margret M. Caruso_____
                                                Margret M. Caruso